**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | | |
|---|---|---|
| TANNER BAUGHMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 125-295 |
| | * | |
| SHERIFF ALFONZO WILLIAMS, in | * | |
| his individual and his | * | |
| official capacity, and BURKE | * | |
| COUNTY SHERIFF'S OFFICE, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**O R D E R**

Presently pending before the Court is Defendants Alfonzo Williams and Burke County Sheriff Office's ("BCSO") partial motion to dismiss (Doc. 5). For the following reasons, Defendants' motion to dismiss is **GRANTED**.

**I. BACKGROUND**

Plaintiff originally brought this action in the Superior Court of Burke County, Georgia on September 4, 2025. (Doc. 1-1, at 1.) Defendants removed the case on December 12, 2025. (Doc. 1, at 2-3.) Plaintiff alleges that on or about August 18, 2024, he was employed as a deputy with the BCSO and responded to the scene of a domestic disturbance involving Robert and Mackenzie McCafferty, a father and daughter. (Doc. 1-1, at 3-4.) Mr.

McCafferty had thrown an object into Ms. McCafferty's car windshield, shattering it, after a verbal dispute. (Id. at 3.) Shortly after Plaintiff began investigating, Sergeant Michael Hickson arrived on scene and joined the investigation. (Id. at 4.) Plaintiff states both officers discussed the "family violence" incident and felony criminal damage to property, with Plaintiff determining that it was appropriate to arrest Mr. McCafferty. (Id.)

Next, Lieutenant Aaron Hannsz arrived on the scene, and he received a phone call in which he said, "[T]hey're not really wanting to not prosecute, but they're not . . . We'll get it taken care of." (Id.) Plaintiff alleges that Mr. McCafferty was Defendant Williams's "friend and political ally," and Defendant Williams had instructed Lt. Hannsz to steer the victim away from having Mr. McCafferty arrested. (Id. at 1.) Lt. Hannsz spoke to Ms. McCafferty about either: (1) arresting Mr. McCafferty for family violence, or (2) issuing him a disorderly conduct citation so he could "go home" and not wait in jail for his mandatory court appearance. (Id. at 5.) Plaintiff alleges Lt. Hannsz asked Ms. McCafferty to choose between both options, "framed the choice in terms of immediate consequences," and persuaded her to agree to the citation rather than the arrest. (Id. at 5-6.) Plaintiff states he told Sgt. Hickson and Lt. Hannsz that he did not agree with how the incident was being handled and that he did not "want

2

to be a part of this" if they were choosing to go the citation route "because of who [Mr. McCafferty] is." (Id. at 6.) Lt. Hannsz acknowledged Plaintiff's objection and reassigned the paperwork to Sgt. Hickson. (Id.)

Plaintiff alleges that approximately one hour later, Plaintiff was called in to Defendant Williams's office and chastised "for his objection to [Defendant Williams's] personal relationship with Mr. McCafferty influencing the decision not to arrest Mr. McCafferty." (Id. at 7.) Plaintiff claims he was berated during the meeting and that Defendant Williams said he had been coming in to the office to fire Plaintiff for "not following his orders" but that he would let Plaintiff continue working. (Id. at 8.) On September 4, 2024, Plaintiff gave Lt. Hannsz his written resignation that stated his last day of work would be September 17, 2024. (Id.)

The next day, Lt. Hannsz informed Plaintiff that his resignation was accepted effective that day, and that his night shift on September 5, 2024, would be his last shift. (Id.) Plaintiff alleges he was told he needed to complete an exit interview with Defendant Williams, which other employees stated was "unheard of." (Id.) During the exit interview, Plaintiff states Defendant Wiliams said, "instead of letting you resign, we are rescinding your resignation, and you will be terminated," and accused Plaintiff of talking to the press about Defendant

3

Williams's orders not to charge Mr. McCafferty. (Id. at 9.) Plaintiff alleges that having a termination on a deputy's record can lead to his or her Peace Officer Standards and Training ("POST") certification being suspended or revoked, which impacts future employment opportunities. (Id. at 9-10.) After his termination, Plaintiff alleges that Defendant Williams issued a memorandum to all BCSO employees stating that Plaintiff's resignation was not accepted "due to his actions which were detrimental to the trust and integrity of [BCSO]." (Id. at 10.)

Plaintiff's complaint brings claims for retaliation in violation of the Georgia Whistleblower Act ("GWA"), First Amendment retaliation, defamation, false light invasion of privacy, intentional infliction of emotional distress ("IIED"), and tortious interference with prospective employment. (Doc. 1-1, at 11-23.) Plaintiff also seeks multiple types of damages, attorney's fees, costs and interest, as well as declaratory, equitable, and injunctive relief. (Id. at 23.) On December 19, 2025, Defendants filed a partial motion to dismiss all of Plaintiff's claims against Defendant BCSO and the IIED claim against Defendant Williams. (Doc. 5, at 1.) Plaintiff responded on January 21, 2026, and Defendants replied on February 4, 2026. (Docs. 15, 16.) The pending motion is now ripe for the Court's review.

4

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the – defendant – unlawfully – harmed - me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual

5

allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

## III. DISCUSSION

The Court considers Defendants' motion to dismiss as it pertains to each Defendant below.

### A. Claims Against Defendant BCSO

Defendants argue BCSO is not a legal entity that is capable of being sued under Georgia law, so the Court lacks subject matter jurisdiction. (Doc. 5, at 6.) Plaintiff argues that he brought his GWA claim against Defendant BCSO and Defendant Williams in his official capacity "to remove any doubt that the employer was before the Court for purposes of the GWA[.]" (Doc. 15, at 2.) Plaintiff does not dispute that courts often find a sheriff's office is not a legal entity capable of being sued and "expressly consents to [BCSO's] dismissal so long as the GWA claim proceeds against Sheriff Williams in his official capacity." (Id. at 3.)

Georgia law requires "a legal entity as the real plaintiff and the real defendant" in each lawsuit. Ga. Insurer's Insolvency Pool v. Elbert Cnty., 368 S.E.2d 500, 502 (Ga. 1988). Georgia recognizes three classes as legal entities: "(1) natural persons; (2) an artificial person (a corporation); and (3) such quasi-artificial persons as the law recognizes as being capable to sue."

Id.    "While local governments qualify as 'persons' . . . state agencies, penal institutions, and private corporations which contract with states to operate penal institutions are generally not considered legal entities subject to suit." Smith v. Glynn Cnty. Det. Ctr., No. 2:20-cv-119, 2021 WL 627034, at *2 (S.D. Ga. Jan. 22, 2021), *report and recommendation adopted*, 2021 WL 623770 (S.D. Ga. Feb. 17, 2021); see also Dean v. Barber, 951 F.2d 1210, 1214-15 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit.").

Because sheriff's offices are typically not legal entities capable of being sued under Georgia law and both Parties agree to the dismissal of Defendant BCSO, all claims against Defendant BCSO are dismissed. Plaintiff's GWA claim against Defendant Williams in his official capacity shall proceed.

**B. IIED Claim Against Defendant Williams**

Defendants argue Plaintiff has not alleged sufficient facts to support a claim for IIED and that none of the alleged conduct is extreme or outrageous as required. (Doc. 5, at 6-7.) Defendants also argue that employment termination and conduct that is not directed at Plaintiff cannot be the grounds for his claim. (Id. at 8-9.) Defendants assert that Plaintiff "did not allege any specific statements or conduct of [Defendant Williams] that was extreme or outrageous," and that "[a]t most, [Plaintiff]

7

alleged that he was unfairly terminated and later defamed"; thus, Plaintiff's IIED claim should be dismissed.  (Id. at 9.)

Plaintiff argues that: (1) Georgia courts have found that abuse of authority and retaliatory motive are important considerations for an IIED claim analysis; (2) county sheriffs have authority over a deputy's career, reputation, and certification; and (3) the complaint alleges Defendant Williams abused his authority as retaliation against Plaintiff for "refusing to participate in unlawful favoritism." (Doc. 15, at 3-4.)  Additionally, Plaintiff asserts that he does not allege a routine discharge, but rather, he alleges "intentional conduct designed to destroy Plaintiff's professional identity and livelihood," and the existence of a broad retaliatory scheme that contained actions directly targeting Plaintiff.  (Id. at 4-5.)

Georgia has long recognized a cause of action for intentional infliction of emotional distress.  Thompson-El v. Bank of Am., N.A., 759 S.E.2d 49, 52 (Ga. Ct. App. 2014) (citation omitted). Yet, a plaintiff's burden on such a claim "is a stringent one." Id.  To prevail, a plaintiff must prove: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe."  Id.

With respect to the second element, the "conduct must be so extreme in degree, as to go beyond all possible bounds of decency,

8

and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. "Conduct that can be characterized as merely vulgar, tasteless, rude, or insulting will not support a claim for intentional infliction of emotional distress." Howerton v. Harbin Clinic, LLC, 776 S.E.2d 288, 300 (Ga. Ct. App. 2015) (citation omitted). Instead, "the conduct on which an intentional infliction of emotional distress claim is based must be so abusive or obscene that reasonable people would naturally assume that the target of such conduct would experience intense feelings of humiliation, embarrassment, fright, or extreme outrage." Id. (internal quotations and citation omitted). Whether the alleged conduct rises to the requisite level of outrageousness is a question of law governed by an objective standard. Id.

Importantly, the existence of a special relationship such as employer and employee may make otherwise non-egregious conduct outrageous. Trimble v. Circuit City Stores, Inc., 469 S.E.2d 776, 778 (Ga. Ct. App. 1996) (citation omitted). For intentional infliction of emotional distress claims in employment cases, "Georgia courts have held that an employer's termination of an employee — however stressful to the employee — generally is not extreme and outrageous conduct." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1229 (11th Cir. 1993) (citation omitted).

Given the lofty requirement that conduct must be extreme or outrageous to support an IIED claim, the Court agrees with

9

Defendants that Plaintiff's IIED claim should be dismissed. Thompson-El, 759 S.E.2d at 52. As for statements made in the employment context, Georgia courts have held that even "horrifying" or "traumatizing" comments are often considered "a common vicissitude of ordinary life," and do not rise to the level of being outrageous. Abdul-Malik v. AirTran Airways, Inc., 678 S.E.2d 555, 560 (Ga. Ct. App. 2009). This rule also applies to false accusations of dishonesty in the workplace. Id. Here, Plaintiff alleges Defendant Williams sent a memorandum to all BCSO employees stating Plaintiff's resignation was not accepted "due to his actions which were detrimental to the trust and integrity of the [BCSO]." (Doc. 1-1, at 10.) Plaintiff argues that Defendant Williams falsely portrayed Plaintiff as a disloyal deputy who engaged in misconduct, thereby insinuating that Plaintiff was dishonest. (Id. at 19.) Plaintiff has alleged that Defendant Williams made these comments to others within an employment context; however, that does not support his IIED claim where Georgia courts have found that similar comments about dishonesty in connection with one's employment are not considered outrageous. Peoples v. Guthrie, 404 S.E.2d 442, 444 (Ga. Ct. App. 1991). Additionally, because Defendant Williams directed his statements at others through a memorandum and his POST certification report, Plaintiff's IIED claim cannot be based on this conduct. (Doc. 1-1, at 10.) "It is well settled that the alleged conduct must

10

have been directed at the plaintiff in order to be actionable under a theory of intentional infliction of emotional distress." Doe v. Roe, 864 S.E.2d 206, 214 (Ga. Ct. App. 2021) (alterations adopted and citation omitted). Here, Plaintiff's pled facts indicate Defendant Williams's alleged statements and reports were directed at others — BCSO employees and POST — rather than at Plaintiff. As such, this conduct cannot be the basis of Plaintiff's IIED claim.

Next, the Parties contest whether Plaintiff alleged a routine employment termination or an intentional retaliatory discharge. Georgia courts generally hold that an employer's termination of an employee, regardless of how stressful it is to the employee, is not extreme and outrageous conduct. Clark, 990 F.2d at 1229. The Court finds that this rule applies to the termination of Plaintiff. While the surrounding circumstances of Plaintiff's termination may impact the abuse of authority and retaliation aspects of the analysis, it has been repeatedly found that a termination itself does not authorize a recovery for IIED. Kitfield v. Henderson, Black & Greene, 498 S.E.2d 537, 542 (Ga. Ct. App. 1998) (citation omitted). Although Plaintiff alleges that the method of his termination was harmful, the facts do not show that it was outrageous so as to support his IIED claim.

Plaintiff also argues that intentional abuse of authority and retaliatory motive are key considerations within the IIED

11

analysis, and that both are alleged in the complaint. (Doc. 15, at 1-3.) Plaintiff cites Lightning v. Roadway Express, 60 F.3d 1551, 1558 (11th Cir. 1995) to support his contention that his IIED claim should not be dismissed when viewing the totality of the conduct because of Defendant Williams's alleged retaliatory abuse of authority. (Doc. 15, at 4-5.) In Lightning, the plaintiff experienced an extended period of abuse in the workplace where "management verbally abused [plaintiff] on several occasions," a supervisor "spat on [plaintiff]," and another supervisor "assaulted him." 60 F.3d at 1557. The instance here is not comparable to the conditions in Lightning. Plaintiff does not allege that he suffered multiple instances of mistreatment in an effort to "provoke and demean" him or "to persuade [Plaintiff] to quit." Lightning, 60 F.3d at 1555. The alleged facts do not show a series of abusive interactions over time but rather indicate that Plaintiff was terminated over the incident with the McCaffertys. (Doc. 1-1, at 1-2.) Additionally, the facts do not support that Defendant Williams's conduct, in light of the totality of the circumstances, was "so terrifying or insulting as naturally to humiliate, embarrass or frighten the plaintiff." Moses v. Prudential Ins. Co., 369 S.E.2d 541, 542-44 (Ga. Ct. App. 1988) (citations omitted). As such, Plaintiff fails to state a claim for IIED and Defendants' motion to dismiss is **GRANTED**.

12

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED**. All claims against Defendant BCSO and Count V against Defendant Williams are hereby dismissed. All remaining counts shall proceed. The Clerk **SHALL TERMINATE** Defendant BCSO as a Defendant to this action.

**ORDER ENTERED** at Augusta, Georgia, this ___15th___ day of June, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

13